IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

RANDY L. ADAMS; DAVID J. AMONS;
FREDDIE BOLTON, JR.; WILEY BROOKS;
JR., Individually and as Representative of
Estate of Wiley Brooks; ESTATE OF
WILEY BROOKS; CLARENCE EDWARD
BRYANT, SR.; JESSIE L. CARTER, JR.;
SHURMON CHAFFEE; ZADIE DYKES,
Individually and as Representative of the
Estate of Billy E. Dykes; ESTATE OF BILLY
E. DYKES; CHARLIE HARRIS, JR.; WALTER
L. McCOY; PENELOPE McCOY, Individually
and as Representative of the Estate of Willie J.
McCoy; ESTATE OF WILLIE J. McCOY;
ANNIE PEARL NEVELS, Individually and
as Representative of the Estate of Louis Nevels;
ESTATE OF LOUIS NEVELS; SELMOND
NORALS; RANDOLPH PERRYMAN;
JEAN Y. PEYREGNE; JOHN ALEXANDER
PRINE; LARRY NOBLE SEWELL, SR.;
LUTHER THREET; and BERDELL WILLIS                                PLAINTIFFS

v.                                                      CIVIL ACTION NO. 4:16-cv-00071-GHD-JMV

JOHN M. O'QUINN & ASSOCIATES, PLLC
d/b/a The O'Quinn Law Firm; JOHN M.
O'QUINN & ASSOCIATES, L.L.P.; JOHN
M. O'QUINN, P.C.; JOHN M. O'QUINN
LAW FIRM, PLLC; T. GERALD TREECE,
Independent Executor of the Estate of John
M. O'Quinn, Deceased; RICHARD N.
LAMINACK; JOE GIBSON, DANZIGER
& DE LLANO, LLP; and ABEL MANJI                                  DEFENDANTS

### MEMORANDUM OPINION GRANTING DEFENDANT DANZIGER & DE LLANO, LLP'S MOTION TO DISMISS AND, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT

Presently before the Court is a motion to dismiss for failure to state a claim and, in the alternative, motion for a more definite statement [34] filed by Defendant Danziger & De Llano,

1

LLP ("Danziger"). Plaintiffs have filed a response, and Danziger has filed a reply. Upon due consideration, the Court finds that the motion should be granted.

## I. *Factual and Procedural Background*

On March 14, 2016, Plaintiffs, as listed in the case caption above, filed this legal malpractice suit against the O'Quinn Firms and "related entities and persons," including Danziger. Pls.' State-Ct. Compl. [2] ¶¶ 13. On April 13, 2016, Defendants timely removed the case to this Court on the basis of diversity of citizenship. Plaintiffs are citizens of Mississippi or Alabama; Defendants are citizens of Texas. The amount in controversy well exceeds the jurisdictional threshold, as it is undisputed that Plaintiffs seek actual, exemplary, and mental anguish damages in an amount greater than $75,000 exclusive of interest and costs. Thus, the Court may exercise subject-matter jurisdiction in this case pursuant to 28 U.S.C. § 1332.

Plaintiffs assert they were exposed to silica dust during their employment in various crafts, such as sandblasting. Due to this exposure, Plaintiffs maintain they were solicited as mass tort plaintiffs in silica litigation in the early 2000s when out-of-state law firms came into Mississippi and flooded Mississippi state courts with multiple-plaintiff suits. Plaintiffs allege, *inter alia*, that Defendants "led clients, the judicial system, defendants in the underlying case, and opposing counsel to believe that its clients had silicosis in order to generate millions of dollars in attorneys' fees and expenses." *Id.* ¶ 14. According to Plaintiffs, silicosis is a disease caused by the inhalation of silica dust.

Plaintiffs allege that the O'Quinn Firms represented approximately 3,000 clients, who were occupationally exposed to silica-containing products and materials, and that law firms, including Danziger, solicited these Plaintiffs to enter into contracts and promised to litigate their silicosis claims against the silicosis defendants, but subsequently referred the silicosis claims to

2

the O'Quinn Firms. *Id.* ¶ 16. Plaintiffs further allege that "[a]s much of 98% of [the O'Quinn Firms'] silicosis docket came from referring law firms," which "included [Danziger] and others, who are jointly responsible for any wrongful acts committed by [the O'Quinn Firms] or its attorneys." *Id.* Plaintiffs allege that they "initially signed contingency fee contracts with either one of the referring lawyers or signed the initial contract directly with [the O'Quinn Firms]." *Id.* ¶ 17.

According to Plaintiffs, Defendants, including Danziger, improperly billed the amounts they paid to companies for medical screening and/or referrals as expenses in their individual cases, conduct that was "unethical" and "a breach of fiduciary duty." *Id.* ¶¶ 21–22. Plaintiffs aver that Defendants, including Danziger, hand-selected medical professionals who diagnosed Plaintiffs with silicosis and other silicosis-related diseases. *Id.* ¶ 23. Plaintiffs allege that although the O'Quinn Firms reached global settlements with several of the silica manufacturers/distributors that were sued, the O'Quinn Firms failed to distribute the settlement proceeds in a timely manner and wrongfully retained portions of those proceeds for their own use. Plaintiffs aver that they were required to pay the O'Quinn Firms a percentage of their settlement proceeds to cover so-called general expenses of the O'Quinn Firms, including referral fees to other law firms and medical screening companies; office overhead and supplies; and costs associated with excessive travel, lodging, and dining. Plaintiffs further aver that "the referring lawyers, including Danziger . . . , had Plaintiffs sign" a new agreement with the O'Quinn Firms "which materially altered the terms of [a] prior agreement and contained the 'general expense' language." *Id.* ¶ 29. Plaintiffs allege that "[n]either [the O'Quinn Firms] nor the referring lawyers disclosed the pros and cons of the advantages and disadvantages of this subsequent agreement." *Id.* Plaintiffs further allege that by 2003, the litigation expenses for the O'Quinn

Firms' silicosis docket was "out of control" with expenses amounting to "over $10 million dollars," including "[a]pproximately $1.7 million" that "was paid to the referral lawyers such as [Danziger] for screening cases . . . ." *Id.* ¶ 31. Finally, Plaintiffs allege that the O'Quinn Firms made multiple errors in processing settlements, including delays and lack of communication, and ultimately failed to fully investigate and assess Plaintiffs' individual claims, including ensuring that settlements were paid in accordance with the severity of Plaintiffs' medical conditions, entering into aggregate or global settlements with silica manufacturers and/or distributors and then intimidating and coercing Plaintiffs into accepting those settlements regardless of the nature and extent of their individual silica-related injuries, permitting the wrongful dismissal of claims against several silica manufacturers and/or distributors, failing to provide necessary paperwork to the courts, failing to process and/or finalize settlement agreements, and attempting to conceal wrongful behavior by sending Plaintiffs deceptive disclosure letters and by destroying and/or altering documents in their files.

Plaintiffs assert claims for legal malpractice/negligence, gross negligence, breach of fiduciary duty, breach of contract, constructive fraud, fraud, and negligent misrepresentation.[1] Plaintiffs alternatively assert claims for fraud by non-disclosure, negligent or intentional infliction of emotional distress, civil conspiracy, and vicarious liability.[2]

---

[1] Plaintiffs also assert a negligent supervision claim against Decedent John M. O'Quinn (Defendant T. Gerald Treece, Independent Executor of the Estate of John M. O'Quinn, Deceased) and Defendant Richard N. Laminack. These allegations name only those two Defendants and their alleged conduct. *See* Pls.' State-Ct. Compl. [2] ¶ 62. To the extent the negligent supervision claim is attempted to be asserted against Danziger, the same is dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

[2] Plaintiffs also assert an alter ego claim against Defendant John M. O'Quinn (Defendant T. Gerald Treece, Independent Executor of the Estate of John M. O'Quinn, Deceased). *See id.* ¶ 88. To the extent the alter ego claim is attempted to be asserted against Danziger, the same is dismissed for failure to state a claim under Rule 12(b)(6).

## II. Legal Standards

Motions to dismiss pursuant to Rule 12(b)(6) "are viewed with disfavor and are rarely granted." *Kocurek v. Cuna Mut. Ins. Soc'y*, 459 F. App'x 371, 373 (5th Cir. 2012) (citing *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003)). "[A plaintiff's] complaint therefore 'must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." ' " *Phillips v. City of Dallas, Tex.*, 781 F.3d 772, 775–76 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *Webb v. Morella*, 522 F. App'x 238, 241 (5th Cir. 2013) (per curiam) (quoting *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010) (quotation marks omitted)). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993) (internal quotation marks omitted)). "Dismissal is appropriate when the plaintiff has not alleged 'enough facts to state a claim to relief that is plausible on its face' and has failed to 'raise a right to relief above the speculative level.' " *Emesowum v. Hous. Police Dep't*, 561 F. App'x 372, 372 (5th Cir. 2014) (per curiam) (quoting *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. 1955).

As stated, Danziger alternatively moves under Rule 12(e) for the Court to order Plaintiffs to amend their complaint in order to provide a more definite statement of their claims. Rule

12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired." FED. R. CIV. P. 12(e).

With the foregoing standards in mind, the Court turns to the motion before it.

### III. Analysis and Discussion

Danziger moves to dismiss Plaintiffs' claims under Rule 12(b)(6) on the following grounds: (1) the claims are barred by the applicable Mississippi statute of limitations; (2) the complaint fails to specify duties, acts, and omissions of each Defendant as they pertain to each Plaintiff; and (3) the complaint fails to state claims for legal malpractice based on negligence, fraud, and negligent or intentional infliction of emotional distress. Alternatively, Danziger moves for the Court to order Plaintiffs to provide a more definite statement of their pleading under Rule 12(e).

In response, Plaintiffs argue that they have alleged plausible claims against Danziger and that their claims are neither time-barred under the discovery rule nor otherwise, because Defendants fraudulently concealed the claims. In the alternative, Plaintiffs argue that if their allegations fail to satisfy Rule 12's standards, Plaintiffs should be granted leave to amend their complaint. Because the Court finds that the claims are barred by the statute of limitations and not allowed under the discovery rule or fraudulent concealment doctrine, the Court need not address the other arguments.

Danziger argues that Plaintiffs' claims—legal malpractice based on negligence, gross negligence, legal malpractice based on breach of fiduciary duty, breach of contract, constructive fraud, fraud, negligent misrepresentation, fraud by non-disclosure, and negligent or intentional

6

infliction of emotional distress—are time-barred under the three-year statute of limitations in Mississippi Code § 15-1-49(1). Plaintiffs maintain that the discovery rule and/or fraudulent concealment allow their claims, because "Defendants never disclosed to Plaintiffs any of the issues, problems, concerns[,] or conduct outlined in th[e] [c]omplaint[,] despite many Plaintiffs' inquiries into the status of their case." Pls.' State-Ct. Compl. [2] ¶ 90. Plaintiffs further maintain that "any request for information made by Plaintiffs would usually be ignored or scant information would be provided" and that "any letters that were sent to Plaintiffs concerning their litigation were typically, and intentionally, drafted in convoluted legalese that not even attorneys at the O'Quinn Law Firm could understand." *Id.* According to Plaintiffs, "it would be impractical to require [] Plaintiffs, laypersons, to have discovered the malpractice and various other conduct outlined . . . at the time it happened. This is especially true in light of Defendants['] affirmative efforts to conceal the information and subsequent efforts to destroy the client files." *Id.* Plaintiffs argue that no evidence supports that Plaintiffs were put on notice of wrongful acts of Danziger at any point prior to 2015 and further argue that Defendants engaged in withholding information of wrongful conduct from Plaintiffs and continued engaging in settlements in the silicosis litigation from 2002 to at least 2015.

All claims asserted against Danziger are based on the same set of facts. Plaintiffs' intentional infliction of emotional distress claim falls under the intentional torts' one-year statute of limitations. *Anderson v. Ladner*, 198 So. 3d 381, 387 n.4 (Miss. Ct. App.), *reh'g denied* (June 7, 2016), *cert. denied*, 202 So. 3d 617 (Miss. 2016). All other claims asserted against Danziger fall under the general three-year statute of limitations in Mississippi. *See Spann v. Diaz*, 987 So. 2d 443, 446–47 (Miss. 2008) (three-year statute of limitations applied to claims for negligence/legal malpractice, fraudulent concealment, breach of contract, breach of fiduciary

duty, and breach of duty of good faith and fair dealing); *Channel v. Loyacono*, 954 So. 2d 415, 420 (Miss. 2007) (three-year statute of limitations applied to legal malpractice, negligence, and conspiracy claims); *Sanderson Farms, Inc. v. Ballard*, 917 So. 2d 783, 789 (Miss. 2005) (three-year statute of limitations applied to fraud claim); *Anderson*, 198 So. 3d at 387 n.4 (three-year statute of limitations applied to negligent infliction of emotional distress claim). The Mississippi Code provides in pertinent part that "[a]ll actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after." MISS. CODE ANN. § 15-1-49(1). Plaintiffs maintain that the discovery rule or the fraudulent concealment doctrine nonetheless allows their claims.

Mississippi courts apply the "discovery rule" to legal-malpractice actions, "holding that the statute of limitations . . . begin[s] to run at the time the client discovered or through the use of reasonable diligence should have discovered his counsel's negligence." *Bradley v. Jordan*, 182 So. 3d 439, 440–41 (Miss. 2016) (citing *Smith v. Sneed*, 638 So. 2d 1252, 1258 (Miss. 1994)); *see* MISS. CODE ANN. § 15-1-49(2). "[I]n legal-malpractice actions, Mississippi courts have never delayed the start of the running of the statute of limitations until the end of the lawyer's representation. Rather, the three years to file a legal-malpractice suit starts to run as soon as the client learns (or should have learned) of his attorney's breach of care or conduct—even if the client continues to feel the ill effects of that breach for years to come." *Thomas v. Cook*, 170 So. 3d 1254, 1257 (Miss. Ct. App. 2015) (citing *Bennett v. Hill–Boren, P.C.*, 52 So. 3d 364, 369 (Miss. 2011)); *see also Stevens v. Lake*, 615 So. 2d 1177, 1183 (Miss. 1993). "The question of whether a statute of limitations is tolled by the discovery rule often turns on the factual determination of what the plaintiff knew and when." *Benvenutti v. McAdams*, 162 So. 3d 808, 814 (Miss. 2015) (internal quotation marks and citations omitted). "Occasionally the question of

whether the suit is barred by the statute of limitations is a question of fact for the jury; however, as with other putative fact questions, the question may be taken away from the jury if reasonable minds could not differ as to the conclusion." *Id.*

"In the legal-malpractice context, the discovery rule applies when either 'the plaintiff will be precluded from discovering harm or injury because of the <u>secretive or inherently undiscoverable</u> nature of the wrongdoing in question' or when 'it is unrealistic to expect a <u>layman</u> to perceive the injury at the time of the wrongful act.' " *Jennings v. Shuler*, 147 So. 3d 847, 855 (Miss. Ct. App. 2014) (quoting *Evans v. Howell*, 121 So.3d 919, 924 (Miss. Ct. App. 2013) (quoting *Channel*, 954 So. 2d at 421) (quotation marks omitted; emphases added)); *accord Donovan v. Burwell*, 199 So. 3d 725, 731 n.8 (Miss. Ct. App.), *reh'g denied* (May 17, 2016), *cert. denied*, 203 So. 3d 596 (Miss. 2016). The layman standard of the discovery rule "applies when it would be impractical to require a layperson to have discovered the malpractice at the time it happened. This is because requiring a layperson to ascertain legal malpractice at the time it occurs would necessitate the retention of a second attorney to review the work of the first.' " *Donovan*, 199 So. 3d at 729 (quoting *Bennett*, 52 So. 3d at 369). The secretive or inherently undiscoverable standard of the discovery rule applies "where there is some piece of physical evidence that is the subject of the test." *Channel*, 954 So. 2d at 421.

" '[F]raudulent concealment of a cause of action tolls its statute of limitations.' " *Robinson v. Cobb*, 763 So. 2d 883, 887 (Miss. 2000) (quoting *Myers v. Guar. Life Ins. Co. of Am., Inc.*, 5 F. Supp. 2d 423, 431 (N.D. Miss. 1998)). "The fraudulent concealment doctrine 'applies to any cause of action.' " *Id.* (quoting *Myers*, 5 F. Supp. at 431). "Any party who asserts a claim of fraudulent concealment must prove that '(1) some affirmative act or conduct was done and prevented discovery of a claim, and (2) due diligence was performed on [the party's] part to

9

discover it.' " *Spann*, 987 So. 2d at 449 (quoting *Channel*, 954 So. 2d at 423). When considering either the discovery rule or the fraudulent concealment doctrine, the common question is "whether the alleged negligence was 'discovered' for the purposes of the discovery rule." *Channel*, 954 So. 2d at 424.

In *Spann*, the plaintiff sued her former attorney for negligence/legal malpractice, fraudulent concealment, breach of contract, breach of fiduciary duty, and breach of duty of good faith and fair dealing. *Spann*, 987 So. 2d at 455. The basis of the plaintiff's claim was that the former attorney had committed legal malpractice due to the failure to timely add certain defendants in that plaintiff's wrongful death/medical malpractice action before the statute of limitations had run. *Id.* at 455–56. The former attorney asserted, *inter alia*, that the action was barred by the applicable statute of limitations; the plaintiff asserted that the fraudulent concealment doctrine nonetheless allowed the claims, because the attorney fraudulently concealed material facts from her which prevented her from discovering the attorney's negligent acts. *Id.* at 449, 456. The Mississippi Supreme Court held that the plaintiff had a known injury, because in the underlying wrongful death/medical malpractice action the court had held that the claims were time-barred and had denied her motion for rehearing. *Id.* at 449–50. The court further held that because the "opinion and denial of a motion for rehearing are public record and [the plaintiff] had all the information necessary to pursue her claim without being directly told that [her former attorney] was negligent," it "was not necessary for another lawyer to tell [the plaintiff] that her lawyer was negligent"; therefore, the plaintiff's fraudulent concealment doctrine argument had "no merit." *Id.* at 450.

Similarly, in this case, Plaintiffs sue Danziger for legal malpractice/negligence, gross negligence, breach of fiduciary duty, breach of contract, constructive fraud, fraud, and negligent

misrepresentation, as well as alternatively for fraud by non-disclosure, negligent or intentional infliction of emotional distress, civil conspiracy, and vicarious liability. *See id.* at 455. As in *Spann*, the basis for the claims is the legal malpractice of Defendants, in this case, including Danziger. *See id.* Also as in *Spann*, in the case *sub judice*, Danziger argues that the action is barred by the applicable statute of limitations, and Plaintiffs assert that the fraudulent concealment doctrine nonetheless allows the claims, because Defendants, including Danziger, fraudulently concealed material facts that prevented Plaintiffs from discovering the negligent acts. *See id.* at 449, 456. But as in *Spann*, here, Plaintiffs had a known injury due to the evidence of matters in the public record.

Danziger maintains that Plaintiffs had reason to know of the alleged misconduct giving rise to the suit as a matter of public record as early as 2005 and cites in support several allegations in the complaint.

First, Danziger cites to Plaintiffs' allegations concerning a 2005 *Daubert* hearing in the MDL litigation, *see* Pls.' State-Ct. Compl. [2] ¶¶ 71–72; Danziger maintains that at that hearing it was revealed that the silicosis diagnoses of the medical professionals in the silicosis litigation were unreliable, and as a result, certain expert testimony was excluded and sanctions were imposed against the O'Quinn Firms. Plaintiffs do not directly address this argument in their response. However, Plaintiffs allege in pertinent part in their complaint that Defendants were the ones providing the medical professionals with the exposure history, thereby "ensuring" a "faulty diagnosis," and that the only explanation for this was that Defendants intended to use the medical professionals "as a cheap and quick way for them to amass their silicosis docket," to "fuel their 'silicosis litigation machine,' " and to "generate millions of dollars in attorney's fees." *Id.* ¶ 71. Plaintiffs then reference the 2005 *Daubert* hearing and the judge's June 30, 2005 Order stating in

pertinent part that the O'Quinn Firms or a temporary service hired by the O'Quinn Firms took the occupational and exposure histories of the plaintiffs and that the O'Quinn Firms should have known it was false from the outset. *See id.* ¶ 72.

Second, Danziger cites to Plaintiffs' allegations citing a transcript from a 2006 congressional hearing that was conducted to address issues, including those asserted by Plaintiffs with the mass silica litigation. *See id.* ¶¶ 73–74. Plaintiffs do not directly address this argument in their response. However, Plaintiffs allege in pertinent part in their complaint: "Recognizing the sad reality that attorneys like O'Quinn placed their interests above those of the clients, the Honorable Ed Whitfield shunned said conduct during a congressional hearing on the issue: '[T]he type of screening used in this [silicosis] class action lawsuit simply generated claimants to obtain settlements for the benefit of certain plaintiff law firms. Dollars were the priority; patient health and wellbeing were afterthoughts.' " *Id.* ¶ 73.

Third, Danziger cites to Plaintiffs' allegations citing a 2010 "disclosure letter" from the O'Quinn Firms to Plaintiffs concerning the "N&M issue" advising Plaintiffs of "the referral fees and overcharges," *see id.* ¶ 46; Danziger maintains that these same "referral fees and overcharges" both make up in part Plaintiffs' claims and form the basis of all of the claims. Plaintiffs argue in their response that this letter was not a disclosure letter but was, as alleged in Plaintiffs' complaint, "so inaccurate and inadequate that even [Defendant Abel] Manji, a highly-skilled silicosis attorney," could not understand it; Plaintiffs further argue that the letter contained "numerous misrepresentations," including that the O'Quinn Firms attorneys had recently reviewed the files. *See id.* Plaintiffs attach to their response a copy of a letter they contend is an example of the 2010 letter referenced in their complaint and maintain that the letter is not a disclosure for purposes of the discovery rule or fraudulent concealment doctrine. The

attached letter, which was apparently sent by the O'Quinn Firms to Plaintiff William C. Acker, states that during the firm's recent review of its silicosis litigation, the O'Quinn Firms discovered that incorrect charges billed to clients "for charges billed to [the O'Quinn Firms] by the screening company for other individuals," and represented that the O'Quinn Firms were "unable to determine why you and other of our silicosis clients were charged those higher amounts and have been unable to determine why that higher charge occurred." The letter further apparently states that the O'Quinn Firms were reducing the amount charged to Plaintiff Acker and increasing his net recovery. *See* O'Quinn Firms' 08/31/2010 Letter to Pl. Acker [50-1] at 2–3. The letter also apparently informed the client to contact the expense inquiry department if he had any questions. *See id.* at 3.

Fourth, Danziger cites to Plaintiffs' allegations concerning the 2011 Texas litigation of similar claims by a group of former Texas silicosis clients against Defendants, *see* Pls.' State-Ct. Compl. [2] ¶ 47, and maintains that the 2011 Texas litigation was a matter of public record that put Plaintiffs on notice of their claims. Plaintiffs do not directly address this argument in their response, but allege in pertinent part in the complaint that the group of former Texas silicosis clients brought the suit against Defendants "for the foregoing conduct," which allegedly prompted the O'Quinn Firms to "destroy, shred[,] and alter documents contained in all of the [s]ilicosis [c]lients' files, including Plaintiffs." *Id.*

Finally, Danziger argues that Plaintiffs were put on notice of their claims by the filing of lawsuits on behalf of former Mississippi and Alabama silicosis clients in Mississippi in 2012. Plaintiffs stated in their response that paragraph 46 of their complaint was "gleaned from prior testimony and documents." Danziger argues the "prior testimony and documents" were gleaned from the 2012 lawsuits and that Plaintiffs used verbatim language from the 2012 pleadings in the

complaint in this case.

Danziger argues that due to all of the foregoing, the latest Plaintiffs could have reasonably discovered the actionable conduct was on December 19, 2012, when that particular litigation was commenced. The case *sub judice* was filed on March 14, 2016 in the Circuit Court of Washington County, Mississippi before removal to this Court.

The Court finds that based on all of the foregoing, no reasonable minds could differ that Plaintiffs learned or should have learned of Danziger's actionable conduct at the latest after the filing of the 2012 lawsuit—and likely much earlier—due to the numerous incidents in the public record. The 2006 congressional hearing raised a serious question about the silicosis litigation, including Plaintiffs' own cases. And unlike the *Bennett* case, these Plaintiffs had received information that should have alerted a layperson to possible negligence: the 2005 *Daubert* hearing in their cases excluding expert testimony from the medical professionals who allegedly screened them for silica-related illnesses and the 2010 letters from the O'Quinn Firms stating that Plaintiffs had been overcharged and that the O'Quinn Firms were not sure about the source of the problems. Although alone these incidents may not have been sufficient to make the potential claims discoverable, together, the incidents were the "type[s] of information reasonably guaranteed to communicate to a layperson" that the reason for these setbacks "was that their attorneys may have been guilty of negligence." *See Bennett*, 52 So. 3d at 371. Further, the 2010 litigation by former Texas clients of the O'Quinn Firms and suing these Defendants, as well as the 2012 litigation by former Mississippi and Alabama clients of the O'Quinn Firms and suing these Defendants, further shed light on these potential claims. The 2010 Texas litigation and 2012 Mississippi litigation are matters of public record. As in *Spann*, these Plaintiffs had all the information necessary to pursue these claims without being directly told by another lawyer or

firm that Danziger was negligent. *See Spann*, 987 So. 2d at 450.

Because the case *sub judice* was initiated approximately three years and four months after the 2012 Mississippi lawsuit, the claims in this case are clearly time barred as to Danziger—even considering the application of the fraudulent concealment doctrine.

The conduct alleged in this lawsuit is egregious, but the Court must apply Mississippi law on the discovery rule and fraudulent concealment doctrine, and in so doing, finds that the claims against Danziger are barred.

### *IV. Conclusion*

In sum, the Court finds that Defendant Danziger & De Llano, LLP's motion to dismiss or for a more definite statement [34] shall be GRANTED, because the Plaintiffs' claims against Defendant Danziger & De Llano, LLPD are barred by the statute of limitations, and neither the discovery rule nor the fraudulent concealment doctrine tolls the statute of limitations. Therefore, Plaintiffs' claims against Defendant Danziger & De Llano, LLP are DISMISSED WITHOUT PREJUDICE.

The case shall remain STAYED as to the arbitration concerning the other Defendants. Therefore, the case shall remain OPEN.

An order in accordance with this opinion shall issue this day.

THIS, the 30th of March, 2017.

_____
SENIOR U.S. DISTRICT JUDGE